UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEY DALE WHITMAN,<br><br>                              Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>                         Defendant.[1] | Case No.:  3:16-cv-28-MMA-JMA<br><br>**REPORT &<br>RECOMMENDATION OF<br>UNITED STATES<br>MAGISTRATE JUDGE RE<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT AND<br>DEFENDANT'S CROSS-<br>MOTION FOR SUMMARY<br>JUDGMENT [ECF Nos. 22, 23]** |

     Plaintiff Joey Dale Whitman ("Plaintiff") seeks judicial review of Defendant

Social Security Commissioner Nancy A. Berryhill's ("Defendant") determination

that he is not entitled to disability insurance benefits ("DIB") and supplemental

security income ("SSI"). The parties have filed cross-motions for summary

judgment.  [ECF Nos. 22, 23.]  For the reasons set forth below, the Court

recommends Plaintiff's motion for summary judgment be **DENIED** and

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is substituted as the
Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

1

Defendant's cross-motion for summary judgment be **GRANTED**.

## I.    BACKGROUND

Plaintiff was born on December 23, 1968 and is a high school graduate. (Admin R. at 30-31.)  Plaintiff worked as a warehouse manager and delivery driver for a party rentals company from 1998 to 2010.  Id. at 31, 152.  Plaintiff stopped working in August 2010 due to swelling and pain in both Achilles tendons.  Id. at 31.

On August 16, 2011, Plaintiff filed an application for a period of disability and disability insurance benefits.  Id. at 16.  On October 31, 2011, Plaintiff protectively filed an application for supplemental security income.  Id. at 16, 141, 157.  In both applications, the Plaintiff alleged a disability onset date of August 8, 2010.  Id. at 16, 141, 157.  The Social Security Administration denied the claim initially on October 26, 2011 and again upon reconsideration on March 14, 2012.  Id. at 75-84.  On April 27, 2012, Plaintiff filed a written request for an administrative hearing.  Id. at 99-104.  On December 9, 2013, a hearing was conducted by Administrative Law Judge ("ALJ") Leland H. Spencer, who determined on February 28, 2014 that Plaintiff was not disabled within the meaning of the Social Security Act.  Id. at 16-23.  On April 27, 2014, Plaintiff requested a review of the ALJ's decision.  Id. at 12. The Appeals Council for the Social Security Administration ("SSA") denied Plaintiff's request for review on November 6, 2015.  Id. at 1-4.  Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).

//

//

//

## II.  MEDICAL EVIDENCE

### A.  Scripps Clinic, Treating Physicians (August 2010 – October 2011)

On August 8, 2010, Plaintiff presented to the urgent care at Scripps Clinic and was examined by Scott Krishel, M.D.  Id. at 189.  Plaintiff complained of pain and swelling in the bilateral Achilles heel tendons over the past several months, with the right tendon becoming particularly worse, making it difficult to walk.  Id.  Plaintiff had a history of gout.  Id.  Dr. Krishel reported slight tenderness on the right side at the base of the heel and no tenderness or swelling in the left Achilles tendon.  Id.  Dr. Krishel reported 5/5 for dorsiflexion and plantar flexion of the ankle against resistance.  Id. at 190.  Dr. Krishel completed x-rays of the ankle and foot bilaterally and indicated no definite acute changes, pending the radiologist's reading.  Id.  Plaintiff's right leg was splinted and he was given crutches.  Id.  Dr. Krishel advised Plaintiff to continue non-steroidal pain medication and prescribed a small dose of Vicodin.  Id.

On August 9, 2010, Plaintiff presented to Dr. Clifford Feaver, a podiatrist. Id. at 191.  Plaintiff reported the Vicodin prescribed to him in Urgent Care had not helped much.  Id.  Dr. Feaver noted Plaintiff was a very pleasant man, in no acute distress.  Id. at 192.  Dr. Feaver reported the radiographs of the right ankle were negative and (1) there was quite substantial inflammation and swelling around the Achilles tendon bilaterally, (2) there was thickening in the middle third, (3) it was much more tender on the right than on the left, (4) the Thompson test was negative, (5) Homans' sign was negative, (6) there was no particular pain with compression of the calves on either side, (7) mild cavus foot structure, (8) dorsiflexion at the ankle was limited bilaterally, and (9) neurovascular status was grossly intact bilaterally.  Id.  Dr. Feaver immobilized the right side in a Controlled Ankle Motion ("CAM") Walker boot for

added comfort and protection and advised Plaintiff to increase his medication dosage for gout.  Id.  Dr. Feaver also ordered an MRI for the more symptomatic right Achilles tendon and advised Plaintiff to follow up when the study became available.  Id.

On August 10, 2010, Plaintiff presented to Edward V.H. Skol, M.D., a rheumatologist.  Id. at 194.  Plaintiff reported the increased dosage of his gout medication had not helped.  Id.  Dr. Skol noted Plaintiff was well appearing, but obviously uncomfortable.  Id. at 195.  Dr. Skol reported there was a thickening and swelling of both Achilles tendons in the proximal aspect and tenderness to palpation.  Id.  The doctor opined that although he could not rule it out completely, he did not think this was a gout flare-up because of the duration of the pain and the non-responsiveness to the increased medication.  Id. at 196.  Dr. Skol advised Plaintiff to continue to wear the CAM Walker boot on the right and to avoid working.  Id.

On August 16, 2010, Plaintiff returned to Dr. Feaver for the MRI review.  Id. at 197.  The MRI demonstrated a moderate grade intrasubstance tearing longitudinally of the right Achilles tendon which clinically correlated to the thickening and the area of chief complaint.  Id. at 197, 232.  Dr. Feaver diagnosed Plaintiff with bilateral Achilles tendinosis, greater on the right than the left.  Id.  Dr. Feaver directed Plaintiff to continue wearing the CAM Walker for an additional two weeks, at which time physical therapy would be initiated.  Id.

From August 30, 2010 to June 28, 2011, Plaintiff presented to Dr. Feaver approximately every six weeks for follow-up.  Id. at 198-211.  By the October 4, 2010 appointment, Plaintiff had developed more significant symptoms on the left and a CAM Walker was dispensed for use on that side.  Id. at 200.  During those follow-up appointments, Dr. Feaver advised Plaintiff to try and wean

himself off the CAM Walker.  Id. at 198, 200, 203, 205, 207.  At the June 28, 2011 appointment, Dr. Feaver noted over the past ten months that Plaintiff consistently had physical therapy and had made relatively good progress, but Plaintiff still experienced significant symptoms with extended activity.  Id. at 211. Plaintiff reported he had attended a fair the previous week for much of the day, but had taken "mini rest breaks."  Id.  Upon physical examination, Plaintiff was able to do toe raising, but Dr. Feaver noted tenderness to palpation and fusiform thickening in the middle third of the Achilles tendon bilaterally.  Id.  Dr. Feaver also noted the left was worse than the right, but there were no other significant changes.  Id.  Dr. Feaver assessed Plaintiff's pain had improved by 80%-90%, but Plaintiff continued to have significantly restricted activity and was unable to work.  Id.  Dr. Feaver recommended a consultation with Dr. Rosen to discuss surgical options.  Id.

On August 10, 2011, Plaintiff presented to Dr. Adam S. Rosen for surgical consultation.  Id. at 213.  Plaintiff reported the CAM Walkers and physical therapy had helped somewhat, but he essentially had not improved and continued to be out of work due to pain.  Id.  Dr. Rosen requested an MRI of the left ankle and discussed the possibility of surgery on the left Achilles.  Id. at 214. The MRI of the left ankle, performed on August 25, 2011, showed Achilles tendinosis with microscopic intra-substance tearing and mild paratenonitis.  Id. at 236.

From August 30, 2011 to October 12, 2011, Plaintiff presented to Dr. John Cronin due to persistent loud snoring and struggling to breathe while sleeping.  Id. at 216-21, 254-56, 259-61.  After completing a sleep study, Plaintiff was diagnosed with mild obstructive sleep apnea.  Id. at 220, 306. During follow-up visits, Dr. Cronin noted Plaintiff responded well to CPAP, and

was still responding well as of January 11, 2012.  Id. at 243-45.

**B.    George G. Spellman, Jr. M.D., Non-Examining Physician**
**      (October 2011)**

On October 14, 2011, Dr. George G. Spellman, Jr. completed a physical residual functional capacity assessment regarding Plaintiff.  Id. at 238-40.  Dr. Spellman reported limitations due to bilateral degenerative joint disease of the feet, Achilles enthesopathy bilaterally, and obesity were evident in the medical evidence of record.  Id. at 239.  Dr. Spellman found Plaintiff was only partially credible because the alleged persisting severity was not evident in the longitudinal treatment record showing improvement in the Achilles tendon.  Id. Dr. Spellman further noted Plaintiff's obstructive sleep apnea was mitigated by the CPAP.  Id.  Dr. Spellman opined Plaintiff was capable of performing at least light work.  Id.

**C.    Adam Rosen, M.D., Treating Physician**
**      (October 2011 – January 2012)**

On October 20, 2011, Dr. Rosen operated on Plaintiff for chronic left Achilles tendinosis.  Id. at 281.  At the time of his left Achilles tendon debridement and repair surgery, Plaintiff was found to have thickened fibrotic tissue in the intrasubstance of the tendon.  Id. at 282.  No calcific pieces were noted and more than 50% of the tendon was intact.  Id.

Beginning on November 2, 2011, Plaintiff presented to Dr. Rosen for post-operative follow-ups.  Id. at 252.  Dr. Rosen noted that clinically, Plaintiff was doing well and converted him into a short-leg cast in slight plantar flexion.  Id. On November 16, 2011, Dr. Rosen noted there was some slight pulling and tightness when he brought Plaintiff up to neutral, but observed he was doing well clinically.  Id. at 250.  On December 7, 2011, Dr. Rosen again noted

Plaintiff was doing well and had a well-healed incision. <u>Id.</u> at 248. Plaintiff was converted into a CAM Walker and given a prescription for physical therapy. <u>Id.</u>

On January 11, 2012, Dr. Rosen noted Plaintiff had not yet started physical therapy. <u>Id.</u> at 246. Upon examination, Dr. Rosen again noted a well-healed incision, but also mild palpable nodular thickening over the area of his prior surgical debridement. <u>Id.</u> He noted no tenderness on palpation and good dorsiflexion and plantar flexion, although it was somewhat stiff compared to the contralateral side. <u>Id.</u> Plaintiff was converted from his CAM Walker to a shoe with a heel lift and was encouraged to start physical therapy. <u>Id.</u>

**D.   James Metcalf, M.D., Non-Examining Physician (March 2012)**

On March 13, 2012, Dr. James Metcalf analyzed Plaintiff's case and affirmed Dr. Spellman's October 14, 2011 finding of a light residual functional capacity. <u>Id.</u> at 308. Dr. Metcalf noted that since the initial decision, Plaintiff had undergone left Achilles tendon debridement and repair. <u>Id.</u> Dr. Metcalf noted Plaintiff was doing well as of January 11, 2012 and was ready to begin physical therapy. <u>Id.</u> Dr. Metcalf's review of Plaintiff's recent activities of daily living showed that Plaintiff reported no problems with personal care, and could prepare sandwiches, soups, and cereal daily. <u>Id.</u> Plaintiff also reported he was able to fold laundry while sitting, go outside daily, drive short distances, and shop in stores for up to 35-40 minutes. <u>Id.</u> Additionally, Plaintiff reported he could watch movies, play board games, and visit with others, and could lift up to ten pounds and walk up to 100 feet. <u>Id.</u> Plaintiff also reported pain with exertional activities and use of the CAM Walker daily. <u>Id.</u> Dr. Metcalf affirmed Plaintiff's light residual function assessment lasting until October 20, 2012, one year from the date of surgery. <u>Id.</u>

//

3:16-cv-28-MMA-JMA

## E.    Adam Rosen, M.D., Treating Physician (May 2013)

Plaintiff returned to Dr. Rosen, his surgeon, on May 8, 2013.  Id. at 335. Dr. Rosen noted Plaintiff had undergone a repeat debridement with flexor transfer on the left Achilles tendon on October 23, 2012.  Id.[2]  Plaintiff reported he had completed physical therapy and was doing well, but there was pain in his right heel.  Id.  Dr. Rosen noted Plaintiff still had swelling of his left foot and as a result, Plaintiff had to increase his shoe size.  Id.  Plaintiff reported occasional burning sensations that worsened after days in which he stood for long periods.  Id.  Plaintiff also noted occasional use of 800 milligrams of ibuprofen, which helped.  Id.

Dr. Rosen made the following findings:  there was a well-healed incision, Plaintiff had mild puffiness to the retrocalcaneal bursa, but no significant edema of the lower extremity; calf was supple and nontender; mild tightness approximately six degrees of dorsiflexion on the left; sensation was grossly intact, and pulses were intact.  Id. at 335-36.  Dr. Rosen adjusted Plaintiff's shoe by adding heel lifts to use for a number of weeks and noted Plaintiff's ambulation improved with the lifts.  Id. at 336.  Dr. Rosen advised Plaintiff to wean out of the heel lifts as his symptoms allowed.  Id.  Dr. Rosen recommended a five-day course of 800 milligrams of Motrin three times a day to help with swelling and pain, and discussed using over-the-counter capsaicin. Id.  Dr. Rosen also discussed the continued role of stretching and advised Plaintiff to use his night split.  Id.  Dr. Rosen spent twenty-five minutes with Plaintiff, noting half the time was spent on patient counseling.  Id.

//

---

[2] Medical records pertaining to Plaintiff's second surgery on October 23, 2012 are missing from the record.  (Admin. R. at 49, 59.)

**F.    Arch Health Partners, Treating Physicians (May 2013 - October 2013)**

On May 17, 2013, Plaintiff presented to Dr. Mark Hubbard of Arch Health Partners for a second opinion. Id. at 324-26. Plaintiff reported he was still seeing Dr. Rosen for bilateral Achilles tendon ruptures, and that he also had depression. Id. at 324. Dr. Hubbard referred Plaintiff to Dr. Brad S. Cohen. Id.

On May 28, 2013, Plaintiff presented to Dr. Cohen and complained of clicking and pain in his Achilles tendons, rated as 10/10, that woke him up during the night. Id. at 310. Upon examination, Dr. Cohen reported findings consistent with the prior surgical procedures. Id. Dr. Cohen recommended Plaintiff seek another opinion. Id. at 311.

On October 25, 2013, Dr. Hubbard reported that Plaintiff saw orthopedic surgeons Dr. Sitler and Dr. Copp, both of whom advised against further surgeries. Id. at 316. Dr. Hubbard recommended a follow-up in six months. Id. at 317.

**G.    Adam Rosen, M.D., Treating Physician (December 2013)**

On December 4, 2013, Plaintiff presented again to Dr. Rosen. Id. at 332. Plaintiff reported that since completing therapy, he had fluctuating pain, sometimes exacerbated without any significant trauma. Id. Dr. Rosen noted Plaintiff came to the office in normal shoes and walked with minimal to nonantalgic gait. Id. Dr. Rosen's physical examination revealed a well-healed incision, intact pulses, and strength at about 4/5 compared to 5/5 on the contralateral side. Id. Dr. Rosen also noted no papable defects, mild tenderness along the path of the Achilles and mild tenderness with calcaneal squeeze. Id. After a long discussion with Plaintiff wherein Plaintiff reported he still suffered from symptoms, Dr. Rosen recommended a conservative approach of stepping back and placing Plaintiff back into the CAM Walker for

approximately three weeks.  Id. at 333.  If the CAM Walker did not help to decrease symptoms, then Plaintiff was directed to go back on crutches for a week or two to decrease the stress across the foot.  Id.  Dr. Rosen provided a sample of diclofenac patches and a prescription for 800 milligrams ibuprofen to be taken three times a day for ten days.  Id.  Dr. Rosen noted that after Plaintiff's pain decreased, they would discuss a gradual return to strengthening exercises and possibly a revisit to formal physical therapy.  Id.

## III.    THE ADMINISTRATIVE HEARING

The ALJ conducted an administrative hearing on December 9, 2013. Id. at 27.

## A.    Plaintiff's Testimony

Plaintiff testified he was born on December 23, 1968 and graduated from high school.  Id. at 30.  From 1998 until August 2010, Plaintiff worked at a party rental company.  Id. at 31.  In August 2010, Plaintiff stopped working because he ruptured both of his Achilles tendons.  Id.  Plaintiff testified he did not look for other work that allowed him to sit down because he could not concentrate due to "excruciating pain."  Id. at 32.

Plaintiff underwent two surgeries on his left Achilles tendon, the second of which was in October 2012.  Id. at 37.  Plaintiff testified Dr. Rosen wanted to get the left tendon under control before performing any work on the right.  Id. at 41.  Plaintiff worked the left tendon with a stretchy band daily to help strengthen the tendon.  Id. at 42.  Plaintiff took 800 milligrams of ibuprofen three times a day to help with the swelling of the tendons.  Id. at 37.

Plaintiff also testified driving approximately once per month in case of

emergencies.  Id. at 34.  Otherwise, Plaintiff stated he stayed home and did not engage in much physical activity.  Id.  Plaintiff's daily activities consisted of making food and using an iPad.  Id. at 34-35.  Plaintiff also testified he could stand for approximately ten minutes, could walk with crutches, and that he elevated his feet while sitting.  Id. at 34.  Plaintiff testified he was prescribed Allopurinol for gout, Zoloft for depression, and Lipitor for cholesterol.  Id. at 36.  Plaintiff noted his gout was under control from consistent use of his medication.  Id. at 41.

Plaintiff testified he uses a cane around the house and crutches if he leaves the house.  Id. at 38.  Since August 2010, Plaintiff has used the crutches approximately 80% of the time.  Id. at 39.  Plaintiff also noted using a CAM Walker boot since August 2010.  Id.  Plaintiff told Dr. Rosen he was in severe pain and he would sometimes remove the boot because he was tired of wearing it.  Id. at 40.  Plaintiff indicated Dr. Rosen told him he cannot take off the boot.  Id.

**B.   Medical Expert Testimony**

Medical Expert ("ME") witness Dr. Arthur Brovender testified at the administrative hearing.  Id. at 42.  The ME's review of Plaintiff's medical records indicated Plaintiff had bilateral Achilles tendonitis in the right and left feet.  Id. at 46.  The ME found Plaintiff was provided crutches in preparation for the first surgery, but the record did not support a need for a cane or crutches for the years post-surgery.  Id. at 51, 53.  The ME also indicated the record did not support a limitation in the capacity to walk or stand.  Id. at 53.  Upon examination by Plaintiff's attorney, the ME testified the record did not show a need for surgery or other intervention with the right Achilles tendon.  Id. at 54.  The ME also testified the record did not

11

support a listing under Listing 1.02A, even after taking Plaintiff's obesity into consideration, because the record did not indicate Plaintiff needed two crutches or canes and he was able to get around.  Id. at 55-56.

Vocational expert Connie Guillory appeared at the hearing, but did not testify.  Id. at 16.

## IV.  THE ALJ DECISION

After reviewing the record, ALJ Spencer made the following findings:

….

2.  The claimant has not engaged in substantial gainful activity since August 8, 2010, the alleged onset date [citation omitted].

3.  The claimant has the following severe impairments: bilateral Achilles tendonitis, left greater than right, status post left Achilles tendon debridement on October 20, 2011 and repeated debridement with flexor tendon transfer on October 23, 2012; and obesity [citation omitted].

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in [the Social Security Regulations].

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work standing for no more than two hours in an eight hour workday [citation omitted].

6.  The claimant is unable to perform any past relevant work [citation omitted].

. . . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform [citation omitted].

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 8, 2010, through the date of this decision [citation omitted].

Id. at 18-23.

## V.   STANDARD OF REVIEW

To qualify for disability benefits under the Social Security Act, an applicant must show:  (1) He or she suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  See 42 U.S.C. § 423(d)(1)(A), (2)(A).  An applicant must meet both requirements to be "disabled."  Id.  Further, the applicant bears the burden of proving that he or she was either permanently disabled or subject to a condition which became so severe as to disable the applicant prior to the date upon which his or her disability insured status expired.  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

## A.   Sequential Evaluation of Impairments

The Social Security Regulations outline a five-step process to determine whether an applicant is "disabled."  The five steps are as follows: (1) Whether the claimant is presently working in any substantial gainful

activity.  If so, the claimant is not disabled.  If not, the evaluation proceeds to step two.  (2) Whether the claimant's impairment is severe.  If not, the claimant is not disabled.  If so, the evaluation proceeds to step three.  (3) Whether the impairment meets or equals a specific impairment listed in the Listing of Impairments.  If so, the claimant is disabled.  If not, the evaluation proceeds to step four.  (4) Whether the claimant is able to do any work he has done in the past.  If so, the claimant is not disabled.  If not, the evaluation continues to step five.  (5) Whether the claimant is able to do any other work.  If not, the claimant is disabled.  Conversely, if the Commissioner can establish there are a significant number of jobs in the national economy that the claimant can do, the claimant is not disabled.  20 C.F.R. § 404.1520; see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

**B.  Judicial Review**

Sections 205(g) and 1631(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C.A. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Commissioner's final decision should not be disturbed unless:  (1) The ALJ's findings are based on legal error or (2) are not supported by substantial evidence in the record as a whole.  Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the

ALJ's conclusion.  See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Andrews, 53 F.3d at 1039).  Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed.  Vasquez, 572 F.3d at 591 (citation and quotations omitted).

Section 405(g) permits this Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C.A. § 405(g).  The matter may also be remanded to the SSA for further proceedings.  Id.

**VI.    DISCUSSION**

Plaintiff contends the ALJ committed error by failing to articulate legally sufficient reasons for discrediting his symptom testimony and finding him not credible. (Pl's Mem. at 3-10.)

In determining a claimant's residual functional capacity, the ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citing SSR 96-8p, 1996 WL 374184, at *5).  "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone."  SSR 96-8p, 1996 WL 374184, at *5.  An ALJ

must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of his symptoms. Treichler v. Comm'r, 775 F.3d 1090, 1102 (9th Cir. 2014).[3]

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible for the following reasons:

(1)    The objective medical evidence did not support the Plaintiff's allegations of a disabling physical impairment or combination of impairments and related symptoms;

(2)    Plaintiff experienced improvement with conservative treatment;

(3)    Plaintiff's daily activities were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations; and

(4)    Plaintiff's testimony was inconsistent with the medical evidence.

---

[3] Plaintiff contends Social Security Ruling ("SSR") 16-3p applies to this case. (Pl's Mem. at 4 & n.3.) Defendant contends it does not because SSR 16-3p became effective on March 28, 2016, well after the ALJ's decision. (Def.'s Mem. at 3 n.2.) SSR 16-3p and SSR 96-7p both relate to the evaluation of symptoms in disability claims. SSR 16-3p superseded SSR 96-7p and removed the term "credibility," clarifying subjective symptom evaluation is not an examination of an individual's character and an ALJ must instead assess whether the claimant's subjective symptom statements are consistent with the record as a whole. See SSR 16-3p, 2016 WL 1119029 (amended at 2016 WL 1237954). Here, the ALJ's decision was issued over two years before SSR 16-3p became effective. Thus, the ALJ could not have employed the new SSR, and his decision includes reference to Plaintiff's "credibility." In any case, because the Court finds the ALJ's findings pass muster irrespective of which SSR governs, the Court need not resolve whether SSR 16-3p retroactively applies. See, e.g., Anderson v. Colvin, 2016 WL 7013472, at *10 n.8 (D. Or. Nov. 30, 2016).

(Admin. R. at 19-22.)  The Court must determine whether the ALJ provided clear and convincing reasons to discount Plaintiff's subjective symptom testimony.

## A.    Objective Medical Evidence

The ALJ's first reason for finding Plaintiff's pain testimony not credible, that the weight of the objective evidence did not support Plaintiff's claims of disabling limitations to the degree alleged (id. at 20), is a clear and convincing reason.  Although an ALJ may not disregard a claimant's testimony "*solely* because it is not substantiated affirmatively by objective medical evidence" (see Robbins, 466 F.3d at 883 [emphasis added]), the ALJ may consider whether the alleged symptoms are consistent with the medical evidence as one factor in his evaluation.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.")

Here, the ALJ evaluated the medical record, which showed Plaintiff had bilateral Achilles tendinosis and tears.  (Admin. R. at 20, 197, 293, 297.)  The ALJ reviewed medical examinations and noted Plaintiff participated in physical therapy and used a CAM Walker for added comfort and protection.  Id. at 20, 192, 197, 200, 201, 203, 207.  The ALJ reviewed early progress notes showing physical therapy and the CAM Walker were relatively effective in providing some pain relief.  Id. at 20, 203, 209, 211.  Although Plaintiff worked on weaning himself from using the CAM Walker, the record reflects Plaintiff never fully weaned himself off it and appeared at the ALJ hearing in the CAM Walker.  Id. at 39, 200, 203, 205, 207, 209,

17

213, 246, 333. The ALJ acknowledged the record reflected that Plaintiff showed reduced range of motion and some swelling and tenderness, but also that Plaintiff's feet had adequate strength and were neurovascularly intact. Id. at 20, 264. The ALJ reviewed other progress notes showing Plaintiff had a well-healed incision, intact pulses, minimally decreased strength in one foot but full motor strength in his other foot, no palpable defects, and only mild tenderness. Id. at 21, 332.

Plaintiff argues the ALJ did not sufficiently consider treatment notes reflecting tenderness on physical examination but fluctuating pain levels, at times exacerbated without significant trauma, as well as Plaintiff's nonantalgic gait and shortened stride on the left side and early heel off. (Pl's Mem. at 6-7.) However, these same treatment notes also reflect that Plaintiff wore normal shoes, walked with minimal to nonantalgic gait, and had a well-healed incision, pulses intact, strength of about 4+/5 compared to 5/5 on the contralateral side, no palpable defects, and only mild tenderness. (Admin. R. at 332.) The treatment notes also show mild puffiness to the retrocalcaneal bursa but no significant edema of the lower extremity, mild tightness, and sensation grossly intact. (Id. at 336.) The ALJ reasonably found these clinical findings did not support Plaintiff's claims of disabling limitations to the degree alleged.

The Court finds the ALJ's determination that the objective medical evidence in the record does not support Plaintiff's allegations of disability is clear and convincing.

**B.** **Plaintiff's Improvement With Conservative Treatment**

The ALJ's second reason for finding Plaintiff's pain testimony not credible, that Plaintiff's condition improved with conservative treatment, is

clear and convincing. Receiving only "minimal" and "conservative" treatment is a valid reason to discredit a claimant's symptom testimony. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999). Plaintiff's treatment primarily consisted of physical therapy and a CAM Walker boot. The ALJ noted Plaintiff primarily took only ibuprofen and had not alleged any side effects from the use of medications. (Admin. R. at 21, 333, 335.) The ALJ also noted the advice to Plaintiff to wean off the use of a CAM Walker. Id. The ALJ found no indication Plaintiff's physician recommended permanent or long term use of any assistive device and the pattern had been to use a CAM Walker for a short period of time and then wean off it. Id. Although Plaintiff points to his use of crutches, and infers that crutches are not conservative treatment (Pl.'s Mem. at 6), the physician's suggestion to use crutches was part of the conservative approach to step back and use assistive devices for only a short period of time (a week or two). (Admin R. at 333.) Also, as the ALJ correctly noted, there is no indication Dr. Rosen ever recommended permanent or long-term use of any assistive devices. Id. The CAM Walker was prescribed for approximately three weeks, and if needed, the crutches for one or two weeks only. Id. Although Plaintiff underwent surgery, which is generally not considered conservative treatment, the surgeries were generally successful in improving Plaintiff's symptoms. Id. at 21. Additionally, treatment notes do not reflect Dr. Rosen recommended any further surgeries and Dr. Sitler and Dr. Copp advised Plaintiff refrain from undergoing any further surgeries. Id. at 316.

The ALJ's finding that Plaintiff's improvement with conservative treatment does not support his allegations of disability is clear and convincing.

## C.    Daily Activities

The ALJ's third reason for discounting Plaintiff's pain testimony is that Plaintiff's daily activities were not limited to the extent one would expect given Plaintiff's complaints of disabling symptoms and limitations.  Id. at 21. It is proper for an ALJ to consider the claimant's daily activities in making his credibility determination.  See, e.g., Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (claimant's daily activities relevant to evaluating symptoms).  "One does not need to be 'utterly incapacitated' in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  "[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."  Fair, 885 F.2d at 603.  Only if a claimant's level of activities is inconsistent with his claimed limitations would activities of daily living have any bearing on the claimant's credibility.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ determined Plaintiff's daily activities did not support his allegations of disability because he went to a fair and spent much of the day there with only short rest breaks, prepared meals, drove a car, and shopped in stores for 35 to 40 minutes.  (Admin. R. at 21.)  Plaintiff testified he drives approximately once a month and although he is able to make himself something to eat, he can only stand for ten minutes.  (Id. at 34.) Plaintiff also testified he used crutches when going out to the store and a cane around the house.  Id. at 38.  Plaintiff also reported going outside once a day, folding laundry while sitting, and spending time with others by

watching movies, playing board games, and conversing.  Id. at 171-73.
These activities are basic human functions that are not determinative of
disability.  See Vertigan, 260 F.3d at 1050 ("the mere fact that a plaintiff
has carried on certain daily activities…does not in any way detract from
[plaintiff's] credibility as to [plaintiff's overall disability.")  As for Plaintiff's trip
to the fair, this was a one-time only event, and Plaintiff's taking small rest
breaks during his visit actually supports his testimony rather than detracting
from it.  In short, Plaintiff's reported daily activities, mainly staying at home,
standing for approximately ten minutes at a time, and using assistive
devices when he leaves the house, do not provide a basis for the ALJ to
discount Plaintiff's symptom allegations.  Plaintiff's testimony about his
daily activities does not necessarily help him establish disability, either, as it
is not inconsistent with an ability to function in a workplace environment.
Therefore, this factor weighs neither for nor against the ALJ's evaluation of
Plaintiff's pain testimony.

**D.    Inconsistency of Plaintiff's Testimony With the Medical Evidence**

The ALJ's fourth reason for finding Plaintiff's pain testimony not
credible, that Plaintiff's testimony is inconsistent with the medical evidence,
is clear and convincing.

The ALJ found by May 2013, after both surgeries, Plaintiff was doing
well overall, had some pain in his right heel and some swelling in his left
foot with only occasional burning sensation for which he took ibuprofen,
which helped.  Id. at 20, 335-36.  By December 2013, Plaintiff noted
fluctuating pain after completing physical therapy, but presented in normal
shoes, walking with a minimal to nonantalgic gait.  Id. at 21, 332.  The ALJ
also noted Dr. Rosen found a well-healed incision, intact pulses, minimally

decreased strength in one foot but full motor strength in the other, no palpable defects, and only mild tenderness.  Id.  The ALJ found although Plaintiff alleged chronic and disabling bilateral foot pain, progress notes frequently showed he was in no acute distress on physical examination.  Id. at 21, 192, 244, 316, 319, 324.  The evidence of fluctuating pain, general improvement, and the lack of acute distress is inconsistent with Plaintiff's statements of excruciating and disabling pain.  Inconsistent statements and testimony can bear upon a claimant's credibility.  See, e.g., Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999).  The ALJ properly considered Plaintiff's inconsistent statements in discrediting Plaintiff's symptom testimony.

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989).  The Court concludes the ALJ articulated sufficient clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective pain testimony.

**VII.    CONCLUSION**

For the reasons set forth above, Plaintiff's motion for summary judgment should be **DENIED** and Defendant's cross-motion for summary judgment should be **GRANTED**.

This report and recommendation will be submitted to the Honorable Michael M. Anello, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before June 8, 2017. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before June 22, 2017. The parties are

advised that failure to file objections within the specified time may waive the
right to appeal the district court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153
(9th Cir. 1991).

DATED:  May 18, 2017

Jan M. Adler
U.S. Magistrate Judge